## J. S. HENRY v. J. D. WILSON.

1. CONDEMNATION of LAND. *Revivor.* A *venditioni exponas* may issue on a judgment condemning land tested at a subsequent term, without revival of the order. The testimony of the judgment debtor alone will not be sufficient to impeach the return of an officer on an execution that he had given notice of a sale thereunder, as required by law.

2. HOMESTEAD. *Abandonment.* Previous to the act of 1879, the homestead right may be lost by the abandonment of the occupancy by the head of the family.

FROM HENRY.

Appeal from the Chancery Court at Paris. JOHN SOMERS, Ch.

COLE & SWEENEY for complainant.

J. N. THOMASON for defendant.

COOPER, J., delivered the opinion of the court.

Ejectment bill, the complainant claiming title under an execution sale of the land as the property of the defendant. The execution was issued on a justice's judgment, and levied upon the land on August 23, 1875. The papers were returned to the circuit court, and, at the January term, 1876, an order of condemnation was entered. At the September term, 1876, the order of sale was renewed. On November 23, 1877, an *alias venditioni exponas* issued, under which the land was sold to the complainant on December 31, 1877.

Henry *v.* Wilson.

The sheriff's deed bears date July 22, 1879.  Both in his return and in his deed, the sheriff states that the sale was made after having advertised and given notice as required by law.  The defenses relied upon by the defendant in his answer, and insisted upon by his counsel in argument, are:

First.  That the *venditioni exponas*, under which the sale was made, issued without authority of law.

Second.  That defendant had no notice of the time and place of sale.

Third.  That defendant was residing on the land with a wife and two children at the time of the levy of the execution, the debt on which the judgment was recovered having been created in 1874.

The ground of the first of these defenses is, that the record of the condemnation proceedings shows no renewal of the order for a *venditioni exponas* after the September term, 1876.  But a *venditioni exponas* is an execution: *Rogers* v. *Jennings*, 3 Yer., 310; *Webb* v. *Armstrong*, 5 Hum., 379.  The order for its issuance stands like the order for a *fieri facias* in an ordinary judgment.  At common law, the *fieri facias* was required to be issued from term to term, but this requirement was so much a matter of form that if a lapse occurred, the judgment plaintiff might make the entry on the judgment roll *nunc pro tunc*.  Even the form has been abandoned in this country, and the execution issues, as of course, as long as the party is entitled to it.

The second defense is sustained by the defendant's testimony alone, against which is not only the pre-

sumption of law that the officer did his duty, but his return on the execution, and the recital of the deed to that effect. And it has been settled on the soundest principles of public policy, that the testimony of one witness, and, *a fortiori*, if that witness be the party interested, will not suffice to impeach an officer's return: *Hunter* v. *Kirk*, 4 Hawk., 277, *Mason* v. *Miles*, 63 N. C., 565; *Driver* v. *Cobb*, 1 Tenn. Ch., 490. "It would not do," says this court, "to set aside the official acts of officer's upon the simple denial of the party himself, unsupported": *Tatum* v. *Curtis*, 9 Baxt., 360.

The defendant's case rests, therefore, upon the claim of homestead. The proof is, that for several years before 1874, and for part of that year, the defendant had lived on the land in controversy, with his family. The land lies near the Kentucky line, and within half a mile of the residence of the father of defendant, who lives in the State of Kentucky. The proof is, that sometime in 1874, the defendant left his wife and family, and went to his father's house in Kentucky, declaring his intention never to live with his wife again. On April 24, 1875, he filed a petition in the circuit court of Calloway county, Kentucky, against his wife for a divorce, which purports to be sworn to by him. In this petition, he states that he is a resident of Calloway county, and has been, without interruption, for one year past. The deposition of a brother of the defendant is taken to sustain the petition, on November 1, 1875, who testified that the defendant had resided in Calloway county about ten

Henry *v.* Wilson.

months. The defendant and the same brother testify in this case, that defendant was living on the land in controversy, in the year 1875.

The proof is clear, that the defendant's wife, in February or March, 1875, after she had been deserted by her husband, was taken, with her children, by her brother to Dyer county, and there remained until about the close of the year 1876. The defendant seems to have joined her in that county about October, 1875, and remained there with his family, until near the end of the year 1876. The weight of the testimony is, that the house was vacant the greater part of the year 1875, and certainly in August of that year when the execution against the defendant was levied upon it. And it was rented to, and occupied by a tenant in 1876.

There was such an abandonment of the homestead occupation as left the property open to an execution levy: *Roach* v. *Hooker*, 2 Lea, 633.

The chancellor's decree must be reversed, and a decree rendered here in favor of the complainant, declaring his right to the property in controversy, and ordering a writ of possession, and an account for rent. Defendant will pay the costs of the case.