THE STATE *vs.* FREDERICK M. BROCKHAUS.

Third Judicial District, New Haven, June Term, 1899. ANDREWS, C. J.,
TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

A petition for a new trial is addressed to the discretion of the court which heard the case, and ought not to be granted for a mere technical error if substantial justice has been done. This rule applies to criminal as well as to civil causes.

Chapter 219 of the Public Acts of 1895, p. 566, provides that jurors shall be electors not less than twenty-five years of age, esteemed in their community as men of good character, approved integrity, sound judgment and fair education. The accused was convicted of murder in the first degree by a jury, one member of which lacked two or three months of the prescribed age. Upon his petition for a new trial, reserved for the advice of this court, it was *held* that the requirement as to age was purely technical, and that the statute, which was directory in character, did not make the possession of such qualification indispensable to the validity of the verdict; and that in the absence of such a provision in the Act the defect in question was healed by the verdict.

Argued June 8th—decided July 12th, 1899.

PETITION by the accused for a new trial upon an indictment for murder in the first degree, brought to the same term of the Superior Court in Fairfield County at which he was convicted and sentenced, and reserved by that court, *George W. Wheeler, J.,* upon a finding of facts, for the consideration and advice of this court. *Judgment denying new trial advised.*

The petition was demurred to for formal defects, and this demurrer was overruled; but these questions were waived by the State's Attorney in argument, and in view of the opinion

on the main question are immaterial. The State's Attorney then answered, and the defendant demurred to the answer. The parties then stipulated that the facts put in issue by the complaint and answer should be found by the court, and the case reserved for the advice of this court as to what judgment should be rendered upon the facts found. The finding states the following facts : —

"At the criminal term of the Superior Court holden at Bridgeport on the third Tuesday of February, 1899, upon an indictment presented to said court charging [Frederick] Max Brockhaus, the petitioner herein, with the murder of David S. Lambert, late of Wilton, in said county, deceased, the said petitioner was duly convicted, except as herein stated, by a petit jury, of murder in the first degree, on March 3d, 1899, and on the 7th day of March, 1899, sentenced in accordance with law, to be hanged on September 6th, 1899, before the hour of sunrise on said day.

"One of the members of said jury was not of the age of 25 years, but was 24 years old on May 22d, 1898; . . . and this fact was not known by the petitioner or his counsel at the time of said trial, and was known by them for the first time on April 10th, 1899.

"The petitioner, by his counsel, requested the court to permit him to examine said juror on the *voir dire*, which request was granted, and said counsel did examine said juror so far as he desired, and had full opportunity at that time to inquire as to his qualifications to sit as a juror, and after such examination he accepted said juror and did not challenge him for any cause.

"Said examination upon the *voir dire* was as follows: *Philip Haugh*, sworn. Examined by *Mr. Fessenden*, State's Attorney. *Q.* You reside in Newton, Mr. Haugh? *A.* Yes, sir. *Q.* How long have you lived there? *A.* All my life. *Q.* Do you know anything about the merits of this case? *A.* No, sir. *Q.* Read or talked about it at all? *A.* No, sir. *Q.* Heard about it? *A.* No, sir. *Q.* Have you any opinion about it, one way or another? *A.* No, sir. *Q.* Know any reason why you cannot fairly try the prisoner? *A.* No, sir. *Q.* Any scruples

State *v.* Brockhaus.

against enforcing the death penalty? A. No, sir. Examined by *Mr. Chamberlain.* Q. Did you read any newspaper account of the Willis trial? *A.* I don't believe I have. Q. You know absolutely nothing about it? *A.* No, sir. Q. Ever served in a criminal trial before? *A.* No, sir. *Mr. Fessenden.* No objection upon the part of the State. *Mr. Chamberlain.* No objection. *The Court.* Accepted; ninth juror.

" The petition herein was not filed in court until the eleventh day of April, 1899. No motion in arrest of judgment has been made by the petitioner in this case. Said juror was not oherwise disqualified except as herein stated."

*John C. Chamberlain,* for the petitioner (the accused).

*Samuel Fessenden,* State's Attorney, for the respondent (the State).

HAMERSLEY, J. Had the defect complained of been known to the defendant before judgment, his proper remedy would have been by motion in arrest of judgment; but being in ignorance of the defect at the time, he is entitled to present his claim by a petition for a new trial. Under our practice, motions in arrest of judgment for causes not apparent of record, and applications for new trial for such causes, are substantially of the same nature, and their determination is controlled by similar principles. *Quinebaug Bank* v. *Leavens,* 20 Conn. 87, 88. This rule is narrowed by the decision in *Brown* v. *Congdon,* 50 Conn. 302; but in view of the just and solid reasons for the rule, which are clearly set forth in the dissenting opinion of Judges LOOMIS and GRANGER (p. 311), we think the case should be overruled. · · ·

A petition for a new trial is addressed to the discretion of the court before whom the trial took place. It must allege facts which show that substantial justice was not or may not have been done. It cannot rely on error merely technical; on the contrary, its very foundation is that a judgment technically valid is substantially unjust. *Barber* v. *Brace,* 3 Conn. 9, 15; *Lester* v. *State,* 11 id. 415, 418. The doctrine of these

cases has been repeatedly affirmed. This law is the same for civil and criminal cases. In *Lester* **v.** *State* we applied the rule laid down to a case of attempt at murder where the defendant had been sentenced to imprisonment for life; and in *Hamlin* v. *State*, 48 Conn. 92, 94, where the petitioner was under sentence of death, we held that the rule for civil and criminal cases is the same. The practice which permitted the use of the petition for new trial in criminal cases and the statutes which have from time to time recognized and confirmed that practice, expressly provide that this procedure shall be used in the same manner and with the same effect as in civil causes. Very early in our history we wisely provided for those accused of crime, the same rights of trial, the same remedies for unjust trial, controlled by the same law as prevailed in all other judicial proceedings. This policy, both wise and humane, has remained unchanged.

In the case at bar the only fact relied upon as a ground for a new trial, is the fact that one of the jurors lacked some two months of being 25 years of age; a fact unknown until after judgment. The verdict and judgment in every other respect were just and according to law. "An Act concerning Jurors," passed in 1895, says: "Section 1. All jurors shall be electors not less than twenty-five years of age, esteemed in their community as men of good character, approved integrity, sound judgment, and fair education." Public Acts of 1895, p. 566. What is the effect of a failure to comply with this rule?

Trial by jury involves some rule of practice or law regulating the selection of persons to act as jurors; the issue, service and return of process for summoning them to court; their examination and impaneling for the trial of a cause; and their conduct while members of the panel. Any departure from the established rule is an error or defect, but if not taken advantage of at the time of occurrence, or not discovered at the time, it is a defect healed by verdict, unless it is made fatal by the plain provisions of law, or is of such a nature that it may have unjustly affected the results. Under the old English practice statutes of jeofail were passed

State *v.* Brockhaus.

to check the tendency to impracticable technicality; and by the words and intent of these statutes, irregularities as to the number, qualifications and returns of the jurors, were aided by verdict, and defects in convening or in the qualifications of jurors were aided by consent of parties. 3 Bac. Abr. 772, 777. This is in pursuance of a principle essential to the conduct of human affairs, which rests upon a self-evident rule of common sense, and has come to be regarded in modern times as axiomatic. The omission of a form, or the transgression of a rule, proper to be observed in providing a jury or in the course of a trial, of such a nature that no harm therefrom to the parties is possible, cannot render the result unjust. *State* v. *Watkins*, 9 Conn. 47, 51; *Pettibone* v. *Phelps*, 13 id. 445, 450.

As to the qualifications of jurors, there are some which may be called inherent. They are those necessary to impartial and honest action. A disqualification of this kind is ordinarily fatal, unless it is known to exist at the time of trial, and is then waived. The want of other qualifications directed by custom or statute for general reasons of policy, and which cannot substantially affect the capacity or impartiality of a juror, does not constitute a defect, unless discovered and taken advantage of before verdict. This seemingly underlies the distinction drawn at common law between challenges *propter affectum* and *delictum*, and challenges *propter defectum*. It furnishes the test whether the irregularity is one absolutely healed by verdict, or is one giving sufficient ground for new trial unless known to and waived by the party complaining. Ownership of certain property, and limitations of age so long as the juror has legal capacity, are plainly qualifications that have little if any relation to the ability of a juror, and none to his honesty or impartiality.

The want of such a qualification in a single juror cannot affect the fairness of a trial or the justice of its result. To prescribe such qualifications for the class of persons on whom the jury duty is primarily imposed, may be a wise policy; but to set aside a verdict fairly reached and justly rendered, because, by accident, the prescribed rule has not been exactly

followed, is contrary to common sense and to law. Chief Justice Shaw, in *Munroe* v. *Brigham*, 19 Pick. 368, 369, in speaking of an age disqualification, said : " Where no other incapacity exists, and no injustice is done, nothing but a positive rule of law would seem to require that a verdict should, on that account, be set aside."

It was early settled as the common law of this State, that a ground for challenge which does not go to the impartiality of a juror, nor affect the performance of his obligations as a juror, cannot be taken advantage of after verdict. *Gilbert* v. *Rider*, Kirby, 180, 184. In *Selleck* v. *Sugar Hollow Turnpike Co.*, 13 Conn. 453, 459, it is plainly intimated that the fact that a juror was not an elector, although unknown at the time, is not ground of exception after verdict; and in *Quinebaug Bank* v. *Leavens*, *supra*, the doctrine suggested in *Selleck* v. *Sugar Hollow Turnpike Co.* is expressly approved.

The case of *State* v. *Babcock*, 1 Conn. 401, is cited as an authority for a different view. In that case one of the jurors was not a freeholder, which fact was unknown to the prisoner until after verdict. The statute of that day required jurors to be " judicious freeholders." On motion in arrest, a new trial was granted. The very brief opinion of CHIEF JUSTICE SWIFT seems to place the decision on the ground that this defect, although a strictly technical one, was nevertheless fatal unless known to the prisoner and waived by him at the time of trial, because the statute made it an indispensable requisite that jurors should be freeholders, and was too positive to be dispensed with; and that a defect unknown to the prisoner could not be waived in fact, and the court would not presume the party intended a waiver of a privilege in a criminal case of a capital nature. The material mistake lies in the misconstruction of the statute. The case was not well considered; indeed it was scarcely considered at all. There was no argument. It was a reservation by one of the sitting judges of a case then pending before him, and doubtless there were considerations known to the judges, not appearing in the report, which justified an exercise of discretion in granting a new trial, and led to the unconsidered reason given. It

came very close to being a *pro forma* judgment by consent of parties. Under these circumstances it is not perhaps strange that the concurring judges overlooked the case of *Gilbert* v. *Rider*, *supra*, tried nearly thirty years before, although our published reports at that time were contained in nine volumes. But it is a little singular that CHIEF JUSTICE SWIFT should not have recalled the case, for it was a hotly contested trial in which he himself moved in arrest because one of the jurors had not taken the oath of fidelity to this State, which fact was unknown to the defendant; and it was then said, "By the whole Court: The exception does not go to the partiality of the juror, nor affect the obligation he was under to find a verdict according to truth; and it is not stronger than the want of a freehold, which, though a ground of challenge, hath been repeatedly adjudged insufficient after verdict." The judges uniting in this opinion were ELLS-WORTH (shortly afterwards Chief Justice of the United States Supreme Court), LAW, PITKIN, SHERMAN and DYER. Statutes requiring property qualifications for jurors had been in force since 1702; the authority of *Gilbert* v. *Rider*, *supra*, upon the construction of those statutes in respect to the indispensable nature of this qualification is most significant, and is confirmed by the later cases above cited.

It is claimed that the present statute makes the attainment of 25 years of age an indispensable requisite to a juror, the want of which is a fatal defect. We think the statute in this respect is directory. The Act of 1895 is in substance the re-enactment of a law first passed in 1880. That law provided that all jurors should be electors not less than thirty years of age; it also provided that "no verdict shall be set aside solely on account of any irregularity in summoning the jury, nor want of qualifications of any juror." The law of 1880 provided additional machinery to secure care and fairness in the selection of jurors, and the additional qualification of age; it increased materially the possibility of failure to follow every statutory requirement in providing a panel; and for this reason, and by way of extreme caution, it plainly declared that a strict pursuance of these statutory provisions

was not intended to be indispensable to the validity of a verdict. The meaning and purpose of the age qualification is thus determined by the legislature itself, in its first statute on the subject. The provision that no verdict should be set aside for want of qualifications of any juror, was too broad, possibly covering matters not intended, and was subsequently repealed; but it had served its purpose of fixing the legislative meaning in requiring an age qualification;. and the remaining section, providing that no verdict should be set aside for any irregularity in summoning a jury, is sufficient, especially in connection with the history of the law (not necessary to follow in detail), to mark the legislative intent. In construing a similar statute in Massachusetts, it was held that the case of a juror over age was within the spirit if not within the letter of this section. *Munroe* v. *Brigham,* 19 Pick. 368, 369. But aside from these considerations, our law is settled that a strictly technical qualification of a juror fixed by statute is a qualification the want of which is healed by verdict. The legislature can say that the want of such a qualification shall invalidate a verdict; but it does not say so by simply fixing the qualification.

Our conclusion is: 1. A new trial will not be granted for technical and harmless error. 2. The law regulating new trial is the same in civil and criminal cases. 3. A disqualification of juror which goes to his honesty or impartiality may be the cause of actual injustice and is ordinarily ground for a new trial, unless it was known to the petitioner and waived by him during trial. 4. A statutory qualification which is strictly technical is healed by verdict, unless the statute unmistakably provides the contrary. 5. The Act of 1895 does not make possession of the age qualification of each juror essential to the validity of a verdict. These positions are fully established by our former decisions.

We think this view is substantially supported by the weight of authority in other jurisdictions. It is unnecessary to refer to the numerous decisions. They have been carefully collated and analyzed in the dissenting opinion of Bennett, J., in *Briggs* v. *Georgia,* 15 Vt. 61, 72; in the opinion of the

court by Hammond, J., in *Brewer* v. *Jacobs*, 22 Fed. Rep. 217, 234; and in the opinion of the court by Gray, C. J., in *Wassum* v. *Feeney*, 121 Mass. 93, 94.

Counsel for defendant have urged the claim that an accused cannot, especially in a capital case, waive any matter. The Supreme Court of Massachusetts, speaking by Chief Justice Shaw, has said: "He may waive any matter of form or substance, excepting only what may relate to the jurisdiction of the court." *Com.* v. *Dailey*, 12 Cush. 80, 83. We applied this principle in *State* v. *Tuller*, 34 Conn. 280, 295; and in *State* v. *Worden*, 46 id. 349, 368; and it is generally accepted in other jurisdictions.

A contention, however, has arisen, especially in capital cases, as to the power to waive the constitution of the jury as fixed by the fundamental law. The real question involved in these cases is, whether the matter to be waived relates to jurisdiction. Is the "right of trial by jury" in criminal cases, and the right to a jury of twelve, a mere personal privilege, or a public right secure against any violation? If the latter, then the trial by a jury lawfully constituted is a matter of jurisdiction which cannot be waived. But the discussion has no bearing on this case. Here and in every similar case the defendant waives nothing. The verdict stands, not because the defendant is presumed to have waived a defect the existence of which was unknown to him, but because the juror was in fact competent and impartial, and by the law of the land the technical defect, sufficient to reject him as a juror if known in time, is insufficient to invalidate the verdict when rendered.

Counsel also invoke the maxim, "*In favorem vitæ, libertatis, et innocentiæ omnia præsumuntur.*" This maxim was cited during the last century in palliation of rulings where the judges rebelled against the extreme severity of a criminal code now obsolete; and has been cited in the present century to escape the labor of settling definitely a difficult question. Except it be a paraphrase for that presumption of innocence which attends every accused person during his trial, it is a glittering generality which serves a useful purpose no more

than the correlative maxim of Syrus, "*Judex damnatur cum nocens absolvitur ;*" unless, indeed, it may be used in capital cases as a stimulant to the exercise of that deliberate investigation and conscientious judgment which Justice expects in every case.

The Superior Court is advised to overrule the demurrer of the accused to the answer of the State, and to render judgment denying a new trial.

In this opinion the other judges concurred.