# Richmond

## CLAY VINCENT TATE, SOMETIMES KNOWN AS CLAY V. TATE v. C. H. LAMB, ACTING COMMISSIONER OF THE DIVISION OF MOTOR VEHICLES OF THE COMMONWEALTH OF VIRGINIA.

May 3, 1954.

Record No. 4237.

Present, All the Justices.

The opinion states the case.

*Emanuel Emroch,* for the appellant.

*J. Lindsay Almond, Jr., Attorney General* and *D. Gardiner Tyler, Assistant Attorney General,* for the appellee.

MILLER, J., delivered the opinion of the court.

This is a suit in equity in which Clay Vincent Tate, hereinafter called appellant, seeks to restrain C. H. Lamb, Acting Commissioner of Motor Vehicles, hereinafter called Commissioner, from enforcing an order which revoked Tate's operator's and chauffeur's licenses for a period of sixty days. The relief prayed for by Tate was denied, and we granted him an appeal.

The bill alleges that the order of revocation was entered pursuant to the provisions of section 46-416.1, 1952 Supplement to Code of 1950[1] (Acts 1952, ch. 666, p. 1117) and

---

[1] The Commissioner shall forthwith revoke, and shall not thereafter reissue during a period of not less than sixty days but shall thereafter reissue within a period of six months, the license of any person, resident or nonresident, upon receiving records of two or more successive and distinct convictions of violations committed within a twelve month period of any

charges that it was based upon alleged convictions of appellant in Prince William and Halifax counties on two successive charges of speeding committed within a period of twelve months. The validity of these convictions is challenged, and it is contended that one or both are void. It is also asserted that section 46-416.1, *supra*, is unconstitutional. If these contentions be sustained, the order of revocation is invalid.

■ The material facts pertaining to the arrests and alleged convictions are not in dispute, and are as follows:

On October 14, 1952, appellant was arrested in Prince William county for operating a truck at an unlawful rate of speed. He was given a traffic violation summons by the arresting officer as provided for in section 46-193, 1952 Supplement, Code of 1950.[2] This summons was issued in duplicate

provision of law, or any rules, regulations, or ordinances duly enacted in pursuance thereof, establishing the lawful rates of speed of motor vehicles and making the violation thereof punishable as a crime; provided that if there be more than two such convictions the period during which such license may not be reissued shall be at least sixty days and not more than one year. The provisions of sections 46-59 and 46-425 shall not apply to any person whose license is revoked under the provisions of this section.

[2] Whenever any person is arrested for a violation of any provision of this title punishable as a misdemeanor the arresting officer shall, except as otherwise provided in section 46-194, take the name and address of such person and the license number of his motor vehicle and issue a summons or otherwise notify him in writing to appear at a time and place to be specified in such summons or notice, such time to be at least five days after such arrest unless the person arrested shall demand an earlier hearing, and such person shall, if he so desires, have a right to an immediate hearing or a hearing within twenty-four hours at a convenient hour, and before a court having jurisdiction under this title within the city, town or county wherein such offense was committed. Such officer shall thereupon and upon the giving by such person of his written promise to appear at such time and place forthwith release him from custody.

Any person refusing to give such written promise to appear shall be taken immediately by the arresting officer before the nearest or most accessible court having jurisdiction under this title.

Any person who wilfully violates his written promise to appear, given in accordance with this section, shall be guilty of a misdemeanor, regardless of the disposition of, and in addition to, the charge upon which he was originally arrested.

Any officer violating any of the provisions of this section shall be guilty of misconduct in office and subject to removal therefrom upon complaint filed by any person in a court of competent jurisdiction.

and one copy kept by the officer and one given to the accused. The summons stated the offense with which appellant was charged and directed him to appear for trial before the trial justice of the county of Prince William, Virginia, at 10 o'clock a.m., October 22, 1952. The copy retained by the officer was signed by appellant and in it he agreed to appear for trial at the time and place designated in the summons.

On October 15, 1952, appellant took his copy of the summons to a justice of the peace, and as permitted by section 19-106, Code of 1950, he entered into a personal recognizance and posted a cash deposit of $10.25 conditioned for his appearance before the trial justice on October 22, 1952. He received an official receipt from the justice on the form prescribed by section 19-107, Code of 1950, for the deposit. This receipt recited that appellant was to appear before the trial justice at 10 a.m. on October 22, 1952, to answer the charge made against him by the arresting officer.

On October 15, 1952, the arresting officer obtained a warrant from the same justice of the peace against appellant. In the warrant the same charge of speeding was made that had been embodied in the original summons, but as Tate had agreed in the summons to be present, given his recognizance and cash deposit and departed, no attempt was made to serve the warrant. Appellant was not required to give this recognizance and make the cash deposit conditioned for his appearance, yet knowing that fact, he elected to do so, apparently in order to avoid the necessity and inconvenience of appearing on October 22, 1952.

The justice of the peace transmitted the cash deposit and warrant to the trial justice, but appellant did not appear for trial on October 22, 1952. When he was called and did not respond, the trial justice was made aware of the fact that the cash deposit had been made and accused was thereupon adjudged guilty. The deposit was forfeited and applied to the payment of the fine and costs assessed against him and entry of conviction was made upon the warrant.

In December, 1952, appellant was arrested in Halifax county upon a charge of speeding and a summons was given to him by the arresting officer, which appellant signed and in which he agreed to appear at a stated time and place before the trial justice of that county to stand trial for the alleged offense. Prior to the date of trial appellant gave his personal recognizance, made a cash deposit of $15.25 with a justice of the peace of that county and received an official receipt which likewise designated the time and place that he was to appear for trial. Here, as in Prince William county, a warrant was issued by the justice embodying the identical charge that had been made in the original summons, and though appellant was told that the warrant had been issued, it was not served upon him. Appellant elected not to appear before the trial justice at the time and place stated in the summons and warrant. The warrant and cash deposit were duly transmitted by the justice of the peace to the trial justice of Halifax county, and upon appellant's failure to appear for trial, he was adjudged guilty and the cash deposit applied to payment of the fine and costs assessed against him. Thus it appears that substantially the same procedure was followed by appellant and by the Commonwealth in Halifax as was followed in Prince William county.

When the appellant was cross-examined in this suit as to the significance of the summons and what he understood its meaning to be, he said:

"A. Well, when I signed the summons my idea was it was an acknowledgment that I was summoned to court."

 * * * * * * *

"Q. But anyway you realized that you were recognized to appear on October 22nd?

"A. Yes, sir.

"Q. And you did not appear?

"A. That is right, sir.

"Q. Is that the language of Tate Exhibit No. 5 with regard to the Halifax case? Is your statement the same with

regard to your paying the $15.25 to Mr. Lewis, the Justice of the Peace there?

"A. Yes, sir.

Appellant asserts that he could not be tried before the trial justice upon the mere summons; that if he could, the summons was not actually returned to and before the Prince William trial justice; that the warrants were not served and he could not be tried upon unserved warrants, and that there were no trials because no pleas were entered for him and no testimony was heard in either instance. He then argues that for these reasons there was lack of due process and that he has not been "convicted" within the meaning of the law.

These contentions are without merit.

██ Appellant could be tried upon the summonses without the issuance of warrants. Section 19-72.1, Code of 1950, among other things, provides as follows:

"Except as provided in section 46-193, any process issued against a person charged with a criminal offense shall be in duplicate and the officer serving such process shall leave a copy with the person charged."

The clear and necessary implication to be drawn from this language, when read along with section 46-193, which provides for the issuance of a summons for these offenses, is that when a summons is issued under section 46-193, there is no need for the issuance or service of a formal warrant. Each summons embodied the charge, and when acknowledged and signed by the accused, it constituted process. It is thus immaterial whether appellant was before the court upon the warrants or upon the summonses, for here it is conceded that the formal warrants embodied the identical charges that had been made in the respective summonses. Had appellant been proceeded against in the warrants for offenses other than those for which he was arrested, and for which he had agreed to appear and answer, there would have been merit in his contention. But when, as here, the subjection of the deposit upon his non-appearance was had upon the identical traffic violations and charges for which he was arrested, summoned and

had agreed to answer, and the procedure agreed to by him has been followed, he cannot be heard to complain of lack of due process of law or that he was not properly before the court and his deposit legally forfeited.

Furthermore, if appellant failed to appear for trial, he could be tried in his absence for the misdemeanor with which he was charged. Sections 19-154 and 19-158, Code of 1950; *Bare* v. *Commonwealth*, 122 Va. 783, 94 S. E. 168; *Foy* v. *Commonwealth*, 132 Va. 671, 111 S. E. 269, or the deposit could be forfeited without a trial. Sections 19-108 and 19-113, Code of 1950; *Lamb* v. *Parsons*, 195 Va. 353, 78 S. E. (2d) 707. Under the provisions of section 19-108, *supra*, if appellant were tried in his absence and adjudged guilty, the deposit could be forfeited and applied to the payment of any fine and costs assessed against him:

"If there be no default in the observance of the conditions of the recognizance, or if there be default and if it be a case which may be tried in the absence of the defendant and he is so tried, and * * * be found guilty, the court or trial justice trying the case shall apply the money, or so much thereof as may be necessary, to the payment of such fines and costs, or costs, as may be adjudged against the defendant, * * *"

If he failed to appear and no trial was had, nevertheless the deposit could be forfeited to the Commonwealth.

"If there be default in any such recognizance, and if the case be not tried in the absence of the defendant and the money disposed of as hereinabove provided for, the forfeiture thereof shall be noted of record and proceedings had thereon, as provided by law, and the money so deposited shall be held subject to the order of the court upon the final disposition of such proceedings." Section 19-108, Code of 1950.

The proceedings would have been more regular had the respective trial justices heard the testimony of the arresting officers before forfeiting the deposits as fines. Yet in each instance the accused was before the court on the summons served upon and acknowledged by him, and the deposits had been forwarded to the respective courts. Thus the trial

justices in each instance had jurisdiction of the offense, the person and subject matter involved. Whether or not any plea was filed or testimony heard or accused actually convicted and fined before the court, or whether the court subjected the deposits to the use of the Commonwealth by way of forfeiture may not be raised or inquired into in this collateral attack upon the validity of the action of the trial justices. Upon appellant's failure to appear, the deposit could be forfeited without trial, or in case of trial, applied to payment of the fine and costs.

Section 46-387(4), Code of 1950, defines "conviction" as used in the Virginia Motor Vehicle Safety Responsibility Act, as follows:

"(4) 'Conviction' means conviction upon a plea of guilty or the determination of guilt by a jury or by a court though no sentence has been imposed or, if imposed, has been suspended and includes a forfeiture of bail or collateral deposited to secure appearance in court of the defendant unless the forfeiture has been vacated, in any case of a charge conviction upon which requires or authorizes the Commissioner to suspend or revoke the license of the defendant."

"* * * Section 46-387(4) provides that if a defendant chooses to forfeit his bond rather than appear and defend the charge, that is a conviction no less than a conviction arrived at by trial. It is as distinctly a conviction for the purpose of the revocation as a conviction on a plea of guilty or not guilty." *Lamb* v. *Parsons, supra,* at p. 357.

The phrase "forfeiture of bail or collateral deposited to secure appearance" as used in section 46-387(4), *supra,* means the subjection of the *res, i.e.,* the "collateral deposit" made by the offender and placed by him under the control of the court. Once the deposited collateral is in the custody and control of the court at the offender's instance, the vital and controlling feature of the procedure is its subjection to the use of the sovereign. If that be accomplished by the order, direction or judgment of the court, then the forfeiture is complete and binding whether it be termed a fine or forfeit.

It is conceded that accused did not appear, and it is clear that the deposits were in fact forfeited and paid to the Commonwealth though they were called fines. So, if the trials be held to be void that would avail appellant naught, for the respective forfeitures of the deposits constitute "successive and distinct conviction." Section 46-387 (4).

The trial court held that appellant had been tried and convicted in each instance. We need not and do not determine whether or not he has been tried and convicted of the misdemeanors in the strict sense and meaning of a "trial and conviction" for a crime. However, for the purpose of revocation of his licenses, the forfeitures had the same force and effect as convictions for the offenses with which he was charged.

We find no lack of due process in the procedure adopted.

■ If section 46-416.1, *supra*, be constitutional, then the forfeitures are valid and constitute convictions for the purpose of revocation of appellant's licenses. By the mandatory language of the statute, *i.e.*, "shall forthwith revoke, and shall not thereafter reissue during a period of not less than sixty days," the Commissioner is required to revoke the offender's license for at least sixty days. Yet the phrase, "but shall thereafter reissue within a period of six months," contemplates that the Commissioner may withhold reissuance of the license for six months. This provision vests in the Commissioner a discretion as to whether or not he will reissue the license within the four months next following the expiration of the mandatory revocation period of sixty days.

The chancellor found that the part of the statute that conferred a discretionary power upon the Commissioner contained no provision for giving notice and holding a hearing upon application for reissuance of the license at the expiration of sixty days, that no standard to guide or govern the Commissioner in the exercise of his discretion as to whether or not he would reissue the license was contained in the statute and that no appeal was given to the interested operator from the Commissioner's ruling. For those reasons he held that por-

tion of the statute to be unconstitutional and void. In that connection he said:

"A study of section 46-416.1 indicates clearly that it was the intention of the General Assembly to cause the summary removal from the highways of any person who has been twice convicted of speeding within a twelve months period. It is equally clear that the intention was to summarily bar him from the highways for a period of at least 60 days. Had the statute stopped at this clear expression of intent there could be no question of its validity. No discretion whatever would have been vested in the Commissioner of Motor Vehicles; and the statute itself would be reasonable on its face. * * *

"But the statute goes further. It reposes in the Commissioner the power to withhold reissuance of the license for a period not to exceed six months. No standard whatever is prescribed to govern the Commissioner in his determination as to whether he will withhold reissuance for any period between 60 days and six months. Is he permitted to consider the former record of the operator? Is he to consider the facts surrounding the two convictions as to how serious were the violations? These and other facts would be pertinent, but the statute is significantly silent. If facts are to be considered, the function of the Commissioner becomes quasi-judicial, and the person to be affected by his judgment is protected by a constitutional guarantee entitling him to a hearing and to reasonable notice of the place and hour of such hearing in order that the truth and relevancy of the facts considered by the Commissioner may be verified and challenged.

* * * * * * *

"* * * the Court is of opinion that so much of Section 46-416.1 of the Code of Virginia as permits the Commissioner to withhold reissuance of a revoked license beyond 60 days violates the guarantees of due process of law and is therefore unconstitutional."

After reaching these conclusions, the chancellor found and held that the mandatory provision of the statute that required

revocation of the license for sixty days was severable from the part that vested a discretion in the Commissioner. *Hannabass v. Maryland Casualty Co.,* 169 Va. 559, 194 S. E. 808; *Boyles v. City of Roanoke,* 179 Va. 484, 19 S. E. (2d) 662. He concluded by deciding that the sixty day revocation· was authorized and valid.

In *Nulter* v. *State Road Commission of W. Va.,* 119 W. Va. 312, 317, 193 S. E. 549, the court states that a license to operate a motor vehicle is not a property right but a conditional privilege:

"The operation of a motor vehicle on the public highways is not a natural right, nor is license to do so a contract, or property right, in a constitutional sense. It is merely a conditional privilege which may be suspended or revoked under the police power, even without a notice or an opportunity to be heard."

"A license is a privilege and not a contract, and it may, upon abuse, be withdrawn." *Law* v. *Commonwealth,* 171 Va. 449, 454, 199 S. E. 516.

In *Thompson* v. *Smith,* 155 Va. 367, 378, 154 S. E. 579, 71 A. L. R. 604, is found this statement on the scope of discretion permitted administrative officials in the revocation of a license:

"The regulation of the exercise of the right to drive a private automobile on the streets of the city may be accomplished in part by the city by granting, refusing, and revoking, under rules of general application, permits to drive an automobile on its streets; but such permits may not be arbitrarily refused or revoked, or permitted to be held by some and refused to other(s) of like qualifications, under like circumstances and conditions. * * *

\*　　\*　　\*　　\*　　\*　　\*　　\*

"This does not mean, however, that no discretion can be left to administrative officers in administering the law. Government could not be efficiently carried on if something could not be left to the judgment and discretion of administrative

officers to accomplish in detail what is authorized or required by law in general terms.

\* \* \* \* \* \* \*

"Where a statute or ordinance assumes to regulate the exercise of a common right, such as that here involved, by requiring a permit for the exercise thereof, which is to be granted or refused and may be revoked by an administrative officer in his discretion, the correct principles for determining whether it is void because it delegates legislative power to the administrative officer are stated by the court in *Mutual Film Corp.* v. *Ohio Industrial Commission*, 236 U. S. 239, 35 Sup. Ct. 387, 392, 59 L. Ed. 552, Ann. Cas. 1916-C, 296, in the following language: 'The legislature must declare the policy of the law and fix the legal principles which are to control in given cases; but an administrative body may be invested with the power to ascertain the facts and conditions to which the policy and principles apply.' "

Section 46-365, Code of 1950, prescribes the standard by which the Commissioner shall determine the fitness of an applicant to receive an operator's or chauffeur's license. He is to ascertain whether the applicant's physical and mental qualifications are such as not to jeopardize the safety of persons or property by his operation of a motor vehicle. The discretion vested in the Commissioner is broad, but an appeal from his refusal to issue the license is given by section 46-360, Code of 1950, to "any court having criminal jurisdiction wherein such person shall reside," and the procedure to be followed is set out in detail.

We hold these two sections to be applicable to an application made at any time after sixty days and within six months to reissue a license revoked under the provisions of section 46-416.1, *supra,* as well as to an application to issue a license in the first instance.

For a comprehensive discussion on the subject of the exercise of discretionary powers vested in administrative officers,

see Judge Burks' opinion in *Taylor* v. *Smith*, 140 Va. 217, 124 S. E. 259.

Upon application for reissuance of a license revoked under section 46-416.1, *supra*, the Commissioner's discretion is to be exercised by applying the standard prescribed by section 46-365, *supra*. If his discretion is arbitrarily, capriciously or wrongfully exercised, it may be reviewed and corrected on appeal in accordance with the provisions of section 46-360, *supra*. Due process is not violated by the provision of section 46-416.1, *supra*, which endows the Commissioner with the discretion to withhold the license for a limited period beyond the sixty days when the applicant's rights are protected as they are by other provisions of law.

We disagree with that part of the chancellor's opinion which held a part of section 46-416.1, *supra*, unconstitutional but as the error thus committed did not affect the holding that appellant's licenses were properly revoked for a period of sixty days, the final decree entered in the trial court is affirmed.

*Affirmed.*