# Richmond

EDWARD LOUIS NELSON v. C. H. LAMB, ACTING COMMISSIONER OF THE DIVISION OF MOTOR VEHICLES OF THE COMMONWEALTH OF VIRGINIA.

May 3, 1954.

Record No. 4234.

Present, All the Justices.

The opinion states the case.

*Sacks & Sacks,* for the appellant.

*J. Lindsay Almond, Jr., Attorney General* and *D. Gardiner Tyler, Assistant Attorney General,* for the appellee.

MILLER, J., delivered the opinion of the court.

C. H. Lamb, Acting Commissioner of Motor Vehicles, hereinafter called Commissioner, received two abstracts of conviction disclosing that Edward Louis Nelson, hereinafter called appellant, had been convicted of two offenses within twelve months of operating a motor vehicle at an unlawful rate of speed.

One abstract was from the Police Court of the city of Norfolk, Virginia, and recorded a conviction on November 26, 1952, for an offense committed on November 6, 1952. The other abstract was from the North Carolina Department of Motor Vehicles, Highway Safety Division, and disclosed that appellant had been convicted on September 22, 1952, in the town of Plymouth, Washington county, North Carolina, for the offense of speeding committed on September 17, 1952.

On January 20, 1953, the Commissioner revoked for a period of sixty days appellant's license to operate a motor vehicle in Virginia. This order of revocation was issued under the mandatory provisions of section 46-416.1, 1952 Supplement, Code of Virginia, 1950, Acts 1952, ch. 666, p. 1117.

In his bill filed against the Commissioner appellant alleged that both convictions were void, and prayed that the Commissioner be enjoined from enforcing the order of revocation. The relief sought was denied by the court, and we granted an appeal.

When appellant was arrested in the city of Norfolk, he was issued a summons which stated the offense charged and cited him to appear in the Police Court of that city on November 26, 1952. He ascertained that he would be allowed

to deposit $16.00 with the traffic bureau of the Police Department of the city and that the deposit would be sent to Police Court on or before the date of trial and used to pay any fine assessed against him. This deposit was made by him, and at his instance placed under the control of the court, and he did not appear for trial as he had agreed to do by signing the summons when arrested.

The procedure followed was identical with that discussed at length in the case of *Lamb* v. *Lowe*, 195 Va. 1024, 81 S. E. (2d) 753, this day decided. For the reasons there stated, we hold that the deposit was lawfully forfeited to the city, and that this forfeiture had the effect of a conviction under section 46-387(4), Code of 1950.

We now consider the conviction in North Carolina.

Section 20-16, 1951 Supplement, General Statutes of North Carolina, allows the revocation of an operator's license if he "Has, within one (1) year, been convicted of two or more offenses of speeding in excess of fifty-five (55) miles per hour * *." This section is substantially similar to section 46-416.1, 1952 Supplement, Code of Virginia, 1950.

Section 20-24(c), 1951 Supplement, General Statutes of North Carolina, provides that "* * * 'conviction' shall mean a final 'conviction' * * * and a forfeiture of bail or collateral deposited to secure a defendant's appearance in court * * * shall be equivalent to. a conviction." This is substantially similar to section 46-387(4), Code of Virginia, 1950.

Appellant filed two sworn bills of complaint in this cause. In the first bill he made the following allegations:

"2. That on September 23, 1952, he was issued a summons at Plymouth, North Carolina, on the alleged charge of speeding and deposited the sum of $21.00, as surety for his appearance to answer said charge; that the amount of said surety was approximately the amount of the usual fine in such cases; and that he did not contest the said charge, by reason whereof the amount he deposited as surety was applied to the fine imposed upon him for said charge."

The exemplified record of the Recorder's Court of Washington county, North Carolina, filed as an exhibit in this suit discloses that appellant was arrested by Carl Gilchrist on September 17, 1952, on a warrant that charged him with operating a motor vehicle "at a speed in excess of 55 miles per hour * * *." The warrant, dated September 17, 1952, sworn out by Gilchrist before C. M. Beasley, a justice of the peace, was returnable before the recorder's court on September 30, 1952. The record further shows that it was "executed 17th day of Sept. 1952 by Carl Gilchrist," and its issuance and service on that date are certified to by the signature of C. M. Beasley, justice of the peace. The record also recites that "the defendant pleads guilty" and was "found guilty as charged * * * 9-23-52," and the $21.00 was applied to pay a $10.00 fine and $11.00 costs.

In his testimony appellant gives this account of what happened when he was arrested in North Carolina:

"A. * * * Then he took me over to a store and there was a policeman there and he said, 'your fine is $21.00.' I said, 'I wasn't going over 55 miles an hour.' He said, 'If you want to tell it to a Judge, you can.' I said, 'When can I tell it to a Judge?' He said, 'There's nobody over at the Courthouse right now.'

"Well, I wanted to go, so I paid the fine."

      \*      \*      \*      \*      \*      \*      \*

"Q. He said, 'If you want to tell it to a Judge, you can?'
"A. Yes, and I said when, and he didn't know when."

What appellant calls a fine was the sum of $21.00 which he paid to C. M. Beasley, a justice of the peace, and for which payment he received the following receipt:

"9-18-52

"Received of Edward Louis Nelson $21.00 for speeding.
                                C. M. Beasley."

In explaining what was done when this deposit was made and why he made the payment, he also said:

"Q. Why did you pay the $21.00?

"A. So as not to be detained.

"Q. Were you ever told to come back?

"A. No.

"Q. Were you ever tried by anybody?

"A. No.

"Q. Did you ever plead guilty to speeding down there?

"A. I was not called down there. The reason I paid that was so he could let me go.

"Q. What did he say he would do if you had not paid the $21.00?

"A. He didn't say, he said he couldn't let me go unless I paid the $21.00.

"Q. He meant he would have held you there?

"A. Yes, sir."

At the conclusion of the testimony, the court made this brief finding of fact:

"This record shows warrant issued and executed duly, and from a practical standpoint Mr. Nelson realized, whether properly or improperly, that Officer Gilchrist was charging him with speeding, because he said he told him how fast he was going.

"He took him to Plymouth and Mr. Nelson knew he was in the hands of the Law, but he says he wanted to get away, so he put up the money to get away. He did say he wanted to know when his case would come up, but the Officer said he couldn't tell him. He did say the man would be taken before a Judge, but he would have to wait down there. He knew the nature of the charge and he knew he had to put up money, and he elected to put it up and go merrily on his way."

Appellant relies upon the case of *In Re Wright*, 228 N. C. 301, 45 S. E. (2d) 370; affirmed on rehearing in 228 N. C. 584, 46 S. E. (2d) 696.

The facts of that case are readily distinguishable from those appearing in this record. Wright had been arrested in South Carolina upon a charge of operating a motor vehicle while under the influence of intoxicants, and a certificate of con-

viction had been sent by the Director of the Motor Vehicle Division of that state to the Department of Motor Vehicles of North Carolina. When his license to operate a motor vehicle was revoked by the North Carolina Department of Motor Vehicles because of this alleged conviction, Wright challenged the revocation and the validity of the conviction. This was done under section 20-25 of the General Statutes of North Carolina by an appeal to the Superior Court from the order of revocation. The Superior Court held the order of revocation invalid because of the invalidity of the South Carolina conviction. In reviewing and affirming the judgment of the Superior Court, the Supreme Court of North Carolina said:

"Here the court below found that no warrant was issued against the petitioner, no hearing was had, no verdict was pronounced, and the suspension was based upon misinformation. Furthermore, it found that petitioner in fact is not guilty. The facts thus found support the judgment entered." *In Re Wright, supra,* at p. 304.

Upon rehearing the court considered the matter of whether the record of the South Carolina court could be treated as a forfeiture of bail under section 20-24(c), *supra.*

The court held that there was no criminal action pending against Wright because no warrant had been issued, and there could be no forfeiture of bail when there were no judicial proceedings pending. In that connection it said:

"Here there was no warrant served on the defendant and it does not appear that one was issued. As there was no warrant there was no criminal action pending in court. As there was no criminal action pending there could be no valid judgment of forfeiture." *In Re Wright,* 228 N. C. 584, 588, 46 S. E. (2d) 696, 699.

It is thus made abundantly clear that the court held the alleged "conviction" invalid because no warrant or process of any character had been served upon the accused charging him with the offense. For that reason there was in fact no criminal action pending against him in which a conviction of

crime could be had or in which there could be forfeiture of bail.

The Attorney General insists that the officer's return on the warrant and the court records import verities and cannot be contradicted. The correctness of that position is denied by appellant.

We need not decide the question of whether or not the officer's return and the judgment of the court of another state[1] can be denied and contradicted in this collateral attack. The recitals in these records are amply sufficient to sustain the trial court's factual finding that appellant had been served with process and was before the court. Appellant's testimony alone is insufficient to deny and impeach the officer's return and the judgment of the court.

In *Glass et ux.* v. *Moore*, 195 N. C. 871, 872, 142 S. E. 585, the court stated in a per curiam opinion:

"The only question presented by this appeal: Is the testimony of a single witness sufficient to attack an officer's return of process purporting regular service? We cannot so hold. All of the authorities are to the contrary in this jurisdiction. See *Trust Co.* v. *Nowell*, ante, 449."

"And it has been settled on the soundest principles of public policy that the testimony of one witness, and *a fortiori* if that witness be the party interested, will not suffice to impeach an officer's return." *Henry* v. *Wilson*, 77 Tenn. 176, 178; cited with approval in *Brake* v. *Kelly*, 189 Tenn. 612, 226 S. W. (2d) 1008.

"It is the settled law in this state that to impeach the return of the service of a citation the testimony of one witness is not sufficient and that his testimony must be strongly corroborated and that the proof of the failure of service must be clear and satisfactory." *Sgitcovich* v. *Oldfield*, —— Tex. Civ. App. ——, 220 S. W. (2d) 724, 727. 72 C. J. S., Process, sec. 102 (b), p. 1145.

---

[1] Compare *Caskie* v. *Durham*, 152 Va. 345, 147 S. E. 218, and cases there cited.

If appellant was not "tried and convicted," within the strict meaning of that term, yet the collateral deposited by him with the justice of the peace was legally forfeited to the state. The allegations in the bills, the return on the warrant, the court records and appellant's testimony are sufficient to sustain the conclusion that the warrant was, in fact, issued and served, and thus appellant was before the court.

When the deposit was made, appellant intended that it be delivered to the court and used to pay any fine assessed in his absence. It was dealt with and used for the purpose intended, and he may not now complain. 6 Am. Jur. Bail and Recognizance, sections 235 and 236, pp. 161, 162; *Commonwealth* v. *Springer*, 138 Va. 719, 121 S. E. 654.

"An accused may waive any matter of form or substance, excepting only what may relate to the jurisdiction of the court. *State* v. *Brockhaus*, 72 Conn. 109, 117, 43 Atl. 850. The plaintiff applied to Herting to fix bail for his appearance in the Police Court, and it was so fixed and he gave it without questioning the bond, or its amount, or the authority. What he did was done voluntarily. He must be presumed to have known the law and known that the taking of the cash bail in this manner was illegal. He must be presumed to have known that the bail given for his appearance would, upon his failure to appear, be forfeited. He thus obtained his release by consenting that, upon failure to appear, the obligation he had entered into should become absolute. Whatever illegality existed in the fixing or taking of the bail he waived. He agreed that forfeiture, by the proper authority, would follow his nonappearance. He cannot now question the integrity of the proceedings undertaken at his own instance. * * *" *Sauskelonis* v. *The City of New Britain et al.*, 89 Conn. 298, 303, 94 A. 368.

No fraud has been perpetuated upon appellant, and no right denied him. He may not be now heard to say that the fund deposited by him was not before the court and was not legally forfeited.

It necessarily follows that the order and judgment of the

Recorder's Court that subjected the deposit made by Nelson to the use of the state was a valid forfeiture. Whether it be called a fine or a forfeit, ownership of the fund has been legally transferred to the state. That judgment constitutes a conviction alike under section 20-24(c), 1951 Supplement, General Statutes of North Carolina, and under section 46-387(4), Code of Virginia, 1950, for the purpose of revoking appellant's license. *Tate* v. *Lamb*, 195 Va. 1005, 81 S. E. (2d) 743.

■ May appellant's license be forfeited when one conviction for speeding was in Virginia and the other in a sister state? Section 46-416, Code of 1950, which was enacted in 1944 (Acts 1944, ch. 384, p. 590) provided for the revocation for one year of an operator's license, whether he be a resident or a non-resident, on conviction of certain enumerated offenses if committed in Virginia or in another state. This section did not provide for revocation of the license for conviction of two offenses of speeding. Section 46-416.1, *supra*, was enacted in 1952, and provided for the revocation of an operator's license in case of two convictions for speeding. This section is supplemental to and in effect an amendment of section 46-416, and it is intended to apply when there have been two convictions of speeding, whether they be within Virginia or in another state.

Section 46-454, 1952 Supplement, Code of Virginia, 1950, makes sections 46-416 and 46-416.1 applicable when a resident of this state is convicted in another state. Its pertinent parts follow:

"The Commissioner shall suspend or revoke the license and registration certificate and plates of any resident of this State upon receiving notice of his conviction, in a court of competent jurisdiction of this state, [or] any other State of the United States, * * * of an offense therein which, if committed in this State would be grounds for the suspension or revocation of the license granted to him or registration of any motor vehicle registered in his name. No suspension or revocation under this paragraph shall continue for a longer period in this

State than in the jurisdiction in which such offense occurred. * * *"

The period of revocation in North Carolina for conviction of two offenses of speeding within one year is not less than sixty days nor more than six months. Section 20-16, 1951 Supplement, General Statutes of North Carolina.

We hold that the two convictions for speeding required by section 46-416.1, *supra*, to sustain a forfeiture of an operator's license are met by proof of one conviction in Virginia and one in any of the jurisdictions listed in section 46-454, *supra*.

The two alleged convictions are held to be "convictions" within the meaning of section 46-387(4), and the decree appealed from is affirmed.

*Affirmed.*