# Richmond

C. H. LAMB, ACTING COMMISSIONER OF THE DIVISION OF
MOTOR VEHICLES OF THE COMMONWEALTH OF VIRGINIA
v. GLENN LOWE.

May 3, 1954.

Record No. 4235.

Present, All the Justices.

The opinion states the case.

*J. Lindsay Almond, Jr., Attorney General, D. Gardiner
Tyler, Assistant Attorney General* and *Joseph E. Baker*, for
the appellant.

No appearance for the appellee.

*J. W. Old, Jr.* and *Vernon D. Hitchings, Jr.*, amicus curiae.

MILLER, J., delivered the opinion of the court.

The ultimate question presented in this suit is whether or not the trial court properly enjoined the appellant, C. H. Lamb, Acting Commissioner of Motor Vehicles, from enforcing an order of January 13, 1953, which revoked for a period of sixty days the license of Carl Glenn Lowe to operate a motor vehicle.

The facts disclosed by the record are not in controversy and briefly stated are as follows:

On September 25, 1952, Carl Glenn Lowe, hereinafter called appellee, was arrested in the city of Norfolk, Virginia, for violation of section 27-34 of the city code of Norfolk, 1950, which regulated and fixed the speed limits for motor vehicles in various areas of the city. The specific charge made against him was that of driving an automobile at 38 miles per hour in a 25 mile per hour limit zone. The arresting officer issued a summons against appellee pursuant to section 27-17, city code of Norfolk, 1950, which section substantially parallels section 46-193, 1952 Supplement, Code of Virginia, 1950. The summons embodied the charge against appellee and directed him to appear for trial before the Police Court of the city of Norfolk on October 8, 1952. Appellee acknowledged the summons and gave his written promise to be present at the time and place of trial by signing a copy that was retained by the officer, and he was thereupon allowed to depart.

Under the direction of the judge of the Police Court a chart or schedule is maintained at the traffic bureau of the Norfolk Police Department, which lists and schedules the minimum sums that are acceptable as fines for exceeding the various speeds in the several speed limit zones of the city. The minimum sum acceptable is also to some degree dependent upon whether the charge is for a first, second or subsequent offense of speeding. Appellee was familiar with this practice,

and shortly after his arrest he phoned to the traffic bureau of the Police Department and advised the clerk that he was charged with a violation of the traffic law, the speed at which he was charged with driving and the zone in which the offense occurred. Having given that information, he then made inquiry as to what it would cost to settle the matter. In testifying, he said:

" * * * I asked them how much it was, and so he told me and I mailed him a check. * * *"

Within two months thereafter appellee received another summons for speeding in the city of Norfolk. This offense was committed on November 17, 1952, and the summons that was issued against him by the officer stated the charge and cited him to appear for trial. Appellee acknowledged and signed the original of this summons, and in it he promised to appear for trial in the Police Court on November 26, 1952. In this instance he called the traffic bureau of the Police Department of the city as he had previously done to ascertain what was the scheduled sum to be deposited for this violation. He gives this account of what happened when he made this call:

"A. I called him up and told him that I got another ticket, how much is that? He said, 'How fast were you going?' I said, 'Well, he wrote it on the ticket, I think it is 60 miles an hour in a 35 miles zone,' and he looked at his chart, and said he would have to look at his chart, and told me and I mailed him a check. That is the last I heard of it until I got the order of suspension from the Division of Motor Vehicles.

"Q. To whom or what department did you mail these checks?

"A. I mailed the checks out to Leonard H. Davis and I put in an envelope and addressed it to the Traffic Bureau of the City of Norfolk.

"Q. Did you ever get a receipt for the payment of these respective amounts of money?

"A. No, sir, I didn't."

As regards each charge and summons, appellee makes the following allegation in his bill:

"That your complainant accepted written service of the above notice and agreed in writing to appear at the time and place designated in said traffic summons notice. That your complainant was advised that the signing of the traffic summons notice was not a plea of guilty and that he could pay a specified sum to the Traffic Bureau of the City of Norfolk, Virginia, without appearing in court on the date set forth in said traffic summons notice."

The bill then charges that he made the payments in each instance to the traffic bureau, and did not appear in court to stand trial on said charges.

In each instance appellee drew his check for the scheduled deposit for his offense to Leonard H. Davis, who is judge of the Police Court, and mailed it to the traffic bureau of the Police Department of the city of Norfolk. The testimony discloses that whenever these payments or deposits are made with the traffic bureau, a receipt is made out for the accused. If a payment or deposit is personally made by an accused, a receipt is given him, but when payments or deposits are mailed to the bureau, a receipt is mailed to the accused only if requested.

Traffic offenses are tried in the city of Norfolk on each Wednesday, and prior to the trial date the summonses, with the accuseds' acknowledgments thereon, are forwarded to the clerk of the Police Court. A daily report sheet and a docket for the court are prepared by a clerk in the traffic bureau, which documents state the identification number on the summonses, the offenders' names, addresses and other identification data, the offenses charged, and the names of all witnesses. These documents also list and disclose each payment or deposit that has been made by the respective offenders. If such payments or deposits as were made by appellee have been received by the traffic bureau, they are listed as fines in the daily report prepared for the court by the traffic bureau. After preparation of these documents, i.e., the daily

report and docket, they, along with the payments, are forwarded to the Police Court. The respective amounts of the deposits which accompany this daily report and the docket sheet, are then listed or entered on the docket sheet by the clerk of the Police Court under the word "Disposition," and the amount that has been paid by an accused is thus designated and recorded as a fine and costs. The entry of this fine and costs under the word "Disposition" on the docket sheet is made by the court clerk or a deputy.

This procedure was followed with regard to both of the summonses and deposits made by appellee. It thus appears that though appellee never appeared at the Police Court or pleaded to the charges made against him, nor was any evidence heard by the judge, the summonses in each instance, and the deposits, were placed in the custody of the Police Court. The deposits placed with the clerk of the court for the purpose intended were in the possession of the court. 10 Am. Jur., Clerks of Courts, sec. 15, p. 951. Though the sums paid were designated and listed as fines on the docket sheet, they were in reality forfeited to the city of Norfolk and placed to the credit of the city by the clerk of the court under the judge's direction.

Section 19-106, Code of 1950, permits an accused to appear before an officer empowered to admit to bail and give bail with surety or give his personal recognizance and make a deposit as security for his appearance "before a court or trial justice having jurisdiction of the case." The form of receipt that is to be issued when a recognizance and deposit are given, is prescribed by section 19-107, Code of 1950.

We find no authority of law for the payment of these deposits or fines to the traffic bureau in advance of trial or at any other time. We agree with the trial judge that the procedure adopted and followed in these cases did not constitute trials of the accused for the crimes charged. They did, however, constitute forfeitures of the deposits made by appellee. What he contemplated and intended when each payment was made to the traffic bureau has been actually ac-

complished. He stayed away from court and the deposits were sent to court, and these funds were forfeited by the court and placed to the credit of the city of Norfolk. The procedure followed was irregular and unwarranted, and nothing that we have said is to be taken as giving to it our stamp of approval. Yet none of appellee's fundamental rights were violated. He could at any time prior to the day and hour of trial have appeared in court, demanded and obtained a trial, and taken down the fund so deposited by him. He elected, however, not to appear but to abide the result. He was before the court on the summonses and the funds deposited by him were, at his instance and election, in the possession and under the control of the court when proceeded against and forfeited to the city. It is of no moment that the funds reached the court through irregular procedure or that they were designated as "fines and costs" on the docket sheet; they were nevertheless forfeited by the court to the use of the city. 6 Am. Jur., Bail and Recognizance, sections 230, 234, and 236; *Sauskelonis* v. *The City of New Britain, et al.*, 89 Conn. 298, 94 A. 368.

Though no trials were actually held and no "conviction" of appellee in the strict sense of the word has been had, yet the subjection of the payments or deposits under the control of the court to the use of the city were proceedings *in rem* against the funds, and the ownership of each deposit was transferred from appellee to the city. The end result thus contemplated and intended by appellee has been accomplished. No trial was necessary to effect the forfeiture. *Tate* v. *Lamb*, 195 Va. 1005, 81 S. E. (2d) 743.

Where no fraud or mistake is involved, and no injustice has been done, it is not the office of a court of equity to relieve one of the just and proper consequences of a course of conduct knowingly and purposely entered into by him.

We hold that the Police Court had jurisdiction of the offenses and of appellee and that the payments or deposits were before the court and under its control when forfeited, and that they were legally forfeited to the city.

Under the provisions of section 46-387 (4), Code of 1950, the forfeiture of this fund or collateral deposited as it was to secure appearance in court, constitutes and measures 'up to a conviction of a charge, "conviction upon which requires or authorizes the Commissioner to suspend or revoke the license * * *." *Lamb* v. *Parsons*, 195 Va. 353, 78 S. E. (2d) 707.

For the reasons stated, the decree appealed from is reversed, the injunction awarded against the Commissioner is dissolved, and the order of revocation of appellee's licenses entered on the 13th day of January, 1953, is declared and adjudged to be in full force and effect.

*Reversed and final judgment.*