# Richmond

C. H. Lamb, Acting Commissioner of the Division of Motor Vehicles of the Commonwealth of Virginia v. Oscar F. Smith, III.

May 3, 1954.

Record No. 4248.

Present, All the Justices.

The opinion states the case.

J. Lindsay Almond, Jr., Attorney General and D. Gardiner Tyler, Assistant Attorney General, for the appellant.

R. Arthur Jett, Roy L. Sykes and Jett, Sykes & Howell, for the appellee.

MILLER, J., delivered the opinion of the court.

In this suit in equity Oscar F. Smith, III, sought to restrain C. F. Lamb, Acting Commissioner of Motor Vehicles, from enforcing an order entered on February 3, 1953, which revoked for sixty days Smith's license to operate a motor vehicle. The relief prayed for was awarded, and we granted the Acting Commissioner an appeal.

The order of revocation was entered pursuant to the provisions of section 46-416.1, 1952 Supplement, Code of 1950, Acts 1952, ch. 666, p. 1117, because abstracts of conviction showed that Smith had been convicted of two offenses committed within twelve months of operating a motor vehicle at an unlawful speed.

One offense was committed in Sussex county, Virginia, on November 28, 1952, and the conviction for this offense is admittedly valid.

The other offense occurred on October 7, 1952, in Washington county, North Carolina. A record of this conviction was certified to our Division of Motor Vehicles by the North Carolina Department of Motor Vehicles.

Section 20-16, 1951 Supplement, General Statutes of North Carolina, permits revocation of an operator's license for a period of sixty days upon proof of conviction of two offenses of speeding within twelve months.

Under section 20-24(c), 1951 Supplement, General Statutes of North Carolina, " 'conviction' means a final conviction and a forfeiture of bail or collateral deposited to secure a defendant's appearance * * * ." This is similar to section 46-387(4), Code of Virginia, 1950.

If this conviction be valid, it has the same force and effect as if Smith had been convicted in the courts of this Commonwealth. Section 46-454, 1952 Supplement, Code of 1950, Acts 1950, ch. 453, p. 887.

The trial court, however, decided that this conviction was not valid, and for that reason enjoined the Acting Commissioner from enforcing his order of revocation.

In appellee's original bill of complaint which was verified by his oath, he, among other things, alleged:

"That on October 14, 1952, your complainant was issued a summons at or near Plymouth, North Carolina, on an alleged charge of speeding; that incident thereto your complainant deposited with the Sheriff of Washington County, North Carolina, a fine in the amount of Ten Dollars ($10.00), plus Court Costs in the amount of Eleven Dollars ($11.00), to be paid by the Sheriff to the Recorder's Court of Plymouth, North Carolina; and that your complainant made no appearance before said Court."

The answer filed to appellee's bill asserted that the conviction was valid, and an exemplified copy of the proceedings of the recorder's court of Washington county was attached and made a part thereof. This record disclosed that appellee had been arrested on October 7, 1952, and a warrant executed upon him on that date which cited him to appear in court on October 14, 1952. The record further disclosed that he had been convicted on October 14, 1952, on his "plea of guilty in absentia" and a fine of $10.00 and costs of $11.00 had been assessed against him.

After this answer had been filed, an amended bill was filed by appellee which was not sworn to. It alleged that the arrest was on October 7, 1952, but denied that any "citation, summons or warrant had been served upon" appellee. It did, however, reaffirm the facts that Smith had been advised by the sheriff that he could leave with the sheriff the sum of $21.00 as a fine and costs and it would be delivered to the clerk of the court; that complainant paid that sum to the sheriff and received a receipt therefor and "was advised that he would not have to return for trial before said court and was allowed to proceed on his way."

In his testimony appellee said that when he was arrested and taken before the sheriff at the court house, the sheriff informed him that "if I would pay $11.00 costs and a $10.00 fine, I could proceed on my way. This I proceeded to do

and I was given a receipt signed by the sheriff, Mr. Reid, and I went on my way."

The receipt given appellee by the sheriff is as follows:

"Received of Oscar Francis Smith, $21.00 charges, speeding.                                    J. K. Reid, Sheriff."

He further states that he was not told to return. on October 14 to stand trial and that he heard nothing further until his operator's license was revoked.

The arresting officer Carl Gilchrist, testified that he makes an average of about forty to fifty arrests per month, that he had no recollection of this arrest, that he always issues a written citation in duplicate requiring the offender to appear at court, that one copy is retained by him and the other, yellow in color, is given to the accused. He further said that the record retained by him in this instance showed that the yellow copy had been made out but he had no recollection of having delivered it to this particular offender.

The original copy of the citation produced by the officer disclosed that Oscar Francis Smith, III, of Norfolk, Virginia, was apprehended on October 7, 1952, and charged with speeding at 70 miles per hour and cited to appear before the recorder's court on October 14. This citation is signed "Carl Gilchrist, Highway Patrolman." The warrant as it appeared in the exemplified record of recorder's court disclosed that it was sworn out by officer Gilchrist on October 7, 1952, before C. M. Beasley, justice of the peace, and that it was served upon appellee on the date that it was sworn out by the officer.

In his brief, appellee says:

"We believe it imperative that the Court first determine the nature of the sum of $21.00 paid by the appellee to Sheriff Reid at Plymouth, North Carolina, on October 7, 1952. The only evidence in the record concerning this point is the testimony of Trooper Gilchrist. He testified that said sum was considered a bond for appellee's appearance in Court and that he noted on his records that the

appellee was bonded by the Sheriff. (R. 29) Trooper Gilchrist was the arresting officer and should know for what purpose said sum was paid. Thus, it is submitted that said sum should be regarded as a bond."

Yet appellee insists that the bond given by him to the sheriff was void because section 15-102, 1951 Cum. Supp., General Statutes of North Carolina, which designates the officers authorized to accept bond before an accused is committed to prison, does not list the sheriff. Appellee had been placed in the custody of the sheriff and was to be remanded to jail. We construe section 15-108, General Statutes of North Carolina, as empowering him to accept bail. It reads in part:

"If any person for want of bail shall be lawfully committed to jail at any time before final judgment, the sheriff, or other officer having him in custody, may take sufficient justified bail and discharge him: * * * "

Under the decisions of North Carolina an accused may deposit cash in lieu of bail and it is subject to forfeiture upon his non-appearance. *White* v. *Ordille*, 229 N. C. 490, 50 S. E. (2d) 499.

In short, it appears that when appellee was arrested and taken before the sheriff, he gave bail by depositing $21.00 and then departed. He undoubtedly intended and knew that the $21.00 was to be applied to payment of the contemplated fine or forfeited to the State upon his non-appearance, and with that knowledge, he left the State. The procedure was analogous to that authorized in Virginia by section 19-106, Code of Virginia, 1950, which allows an accused to give his personal recognizance and deposit collateral with an officer authorized to admit to bail, which deposit may be forfeited if accused fails to appear for trial. Such forfeiture has the force and effect of a conviction under section 46-387(4), Code of Virginia, 1950, and like effect in North Carolina under section 20-24(c), 1951 Supplement, General Statutes of North Carolina.

Whether or not the procedure adopted and fully ac-

quiesced in by accused was regular in all particulars is of no moment. If process had been served upon appellee, the forfeiture of the fund to the state, whether it be called a fine or a forfeit, would have the force and effect of a conviction. Thus the final question to be decided is whether or not the evidence conclusively shows that accused was properly before the court.

"While there is some authorty to the effect that the testimony of defendant alone may be sufficient to overcome the presumption in favor of the officer's return, generally the rule is laid down that a return of process cannot be impeached by the unsupported testimony of defendant, or the party served, or the party on whom service is stated by the officer to have been made, or of another single witness, even though the officer fails to recall the service, and that the testimony of other defendants that they were not served is not effective or sufficient. However, a return may be overcome by the testimony of only one witness where his evidence is strongly corroborated. A denial of service by a defendant or witness, in order to overcome the return of process, must be strongly and substantially corroborated. The corroborating evidence need not be direct and may be wholly circumstantial, but it must come from a source other than that of the one witness who is attacking the service. An officer's return of service of process should not be impeached solely by his own testimony." 72 C. J. S., Process, sec. 102 (b), p. 1145. *Penley* v. *Rader, et al.*, 208 N. C. 702, 182 S. E. 337.

The testimony of officer Gilchrist that it is his universal practice to deliver a citation to the offender, the fact that the yellow copy of the citation was made out, appellee's assertion in his original bill that he "was issued a summons," the exemplified copy of the records of the recorder's court reciting that a warrant was served, the deposit of $21.00 with the sheriff, and the assertion of appellee that he deposited it with the knowledge that it would be used to pay his fine and the ultimate fact that it was so used, furnish

certain and conclusive evidence that accused was before the court. Clearly the court had jurisdiction over appellee and upon his non-appearance, the right to forfeit the deposit to the use of the State.

As the evidence conclusively proves that process was served, we need not and do not decide the question of whether or not the officer's return, disclosing service in North Carolina, could be contradicted and impeached.[1]

For the reasons stated in *Nelson* v. *Lamb*, 195 Va. 1043, 81 S. E. (2d) 762, this day decided, we hold that the two convictions fulfill the requirements of section 46-416.1, *supra*, and justified revocation of appellee's license.

The decree appealed from is reversed, the injunction awarded by the trial court on July 10, 1953, is dissolved, and the order of revocation entered by the Acting Commissioner on February 3, 1953, is adjudged and declared to be in full force and effect.

*Reversed and final decree.*

---

[1] For rule in Virginia, see *Caskie* v. *Durham*, 152 Va. 345, 147 S. E. 218.