# Richmond

## C. H. Lamb, Commissioner, &c. v. James Harris Butler, &c.

November 26, 1956.

Record No. 4610.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan, Miller and Whittle, JJ.

The opinion states the case.

D. Gardiner Tyler, Jr., Assistant Attorney General (J. Lindsay Almond, Jr., Attorney General, on brief), for the appellant.

Emanuel Emroch, for the appellee.

SPRATLEY, J., delivered the opinion of the court.

James Harris Butler instituted this proceeding in equity, praying that C. H. Lamb, Commissioner of the Division of Motor Vehicles of Virginia, be enjoined from enforcing an order entered on September 16, 1953, which revoked for sixty days Butler's license to operate a motor vehicle in Virginia. The relief prayed for was awarded, and we granted the Commissioner an appeal.

The order of revocation was entered pursuant to the mandatory provisions of § 46-416.1, 1952 Supplement, Code of Virginia, 1950, Acts 1952, chapter 666, page 1117, because abstracts of conviction showed that Butler had been convicted of two offenses committed within twelve months of operating a motor vehicle at an unlawful speed.

One conviction was for an offense committed in the City of Richmond, Virginia, on October 19, 1952. The other offense occurred on August 15, 1953, in Wilson County, North Carolina. Notice of the suspension of Butler's license to drive in North Carolina for one year from August 15, 1953, was mailed to Butler on September 9, 1953, by the Department of Motor Vehicles of that State. A copy of that notice was forwarded by the North Carolina Department of Motor Vehicles to our Division of Motor Vehicles, and received by it on September 11, 1953.

On September 16, 1953, our Commissioner of Motor Vehicles notified Butler of the revocation of his license to drive in Virginia for sixty days from that date. Code of Virginia, § 46-454.

In appellee's original bill of complaint, verified by his oath, he challenged the validity of each of the above convictions.

Commissioner Lamb, in his answer, averred the validity of each conviction, and further asserted that appellee was estopped from denying their legality and not entitled to relief in equity.

On September 25, 1953, the trial court issued a temporary injunction restraining appellant from revoking the appellee's driving license. The case was continued from time to time, until July 16, 1954, at which time appellee, by leave of court, filed an amended bill of complaint. In the amended bill he alleged that in accordance with § 20-16, General Statutes of North Carolina, he had on June 9, 1954, requested the Department of Motor Vehicles of that State to grant him a hearing and to rescind its order suspending his driving privileges; that a hearing was granted and held on June 24, 1954; and that, in view of the facts shown at such hearing, and of the opinion of the Attorney General of North Carolina, the Department of Motor Vehicles of that State rescinded its order suspending his driving privileges. Exhibited with the amended bill was a photostatic copy of a letter, dated June 25, 1954, from the Director, Safety Division, State Highway Patrol, Department of Motor Vehicles of North Carolina, to appellee, notifying him that his driving privileges in that State had been "restored."

In answer to the amended bill, appellant denied that the action of the Department of Motor Vehicles of North Carolina in restoring the driving privileges of appellee in any wise affected the validity of appellant's order of September 16, 1953, revoking the driving privileges of appellee in Virginia. He further averred that appellee had been duly convicted as shown by a duly authenticated copy of the records of the General County Court of Wilson County, North Carolina; and that there was no equity in the contention of the appellee.

On July 15, 1954, Butler, after due notice, proceeded to take the depositions of C. R. Simons, a member of the State Highway Patrol of North Carolina, and James E. M. Miles, Judge of the General County Court of Wilson County, North Carolina. Appellant called as a witness, Miss Lucy Rogers, Assistant Clerk of the Superior Court of Wilson County. She refused to be sworn but was allowed to testify.

When the case was heard in the lower court, appellee abandoned his contention that he had not been lawfully convicted in the Traffic Court of the City of Richmond on November 26, 1952. At the hearing Butler testified and presented certain exhibits; but called no

other witness. He declined to offer in evidence the depositions taken on July 15th, and upon motion of the appellant, the court admitted and took them under consideration. Appellant presented an authenticated copy of the record of the proceedings of the General Court of Wilson County, North Carolina, against Butler, authenticated in accordance with the provisions of Virginia Code, §§ 8-271 and 8-272. The trial court took the case under advisement and on March 23, 1956, entered the following order:

"And the Court now being of opinion that under the laws of the State of North Carolina and the interpretation thereof by the Attorney General of that State, the complainant, James Harris Butler, was not validly convicted in that State of the offence of speeding alleged to have been committed on August 15, 1953; and the Court being of the further opinion that the communication from the State Highway Patrol of North Carolina dated June 25, 1954, addressed to the respondent is an effective recision and cancellation of the notice received by the respondent on September 11, 1953, purporting to suspend the operator's license of the complainant in North Carolina on the ground of the said alleged offence of speeding;

"Wherefore the Court being of the further opinion that the Order of Revocation entered by the respondent on September 16, 1953, revoking the operator's license of the complainant for a period of sixty days is void, the Court doth so adjudge, order and decree.

"And the Court doth permanently enjoin the respondent from revoking the operator's license of the complainant if said purported revocation be based in whole or in part upon the aforesaid alleged conviction in North Carolina."

■ The controlling question is whether or not Butler had been lawfully convicted of two successive violations committed within a twelve months period of any provision of law "establishing the lawful rates of speed of motor vehicles and making the violation thereof punishable as a crime," within the meaning of Virginia Code, §§ 46-416.1, as amended, and 46-454.

Butler argues that his conviction in North Carolina was void because there was no citation or warrant served on him, no bond forfeited; no plea of guilty; no waiver of appearance; and no judicial proceeding pending against him on August 24, 1953, the day his case was called and the judge signed the docket book, or at any other time; and that the North Carolina trial court was without jurisdiction

over him and had no right upon his non-appearance to forfeit his deposit to the State of North Carolina.

Butler having abandoned his contention as to the Virginia offense, our discussion will be confined to the validity of the North Carolina conviction. In that connection, we will consider the procedure in this case, and the evidence relating to that conviction, in the light of the statutes involved.

At the hearing in the Virginia trial court, Butler, who is engaged in the "neon sign business," testified that he was on a trip from Virginia to Florida. He said that on August 15, 1953, while driving south of Wilson, North Carolina, he was stopped by a traffic officer, and told that he was speeding. At the direction of the officer, he drove to the Court House at Wilson. There, in the Court House, he was confronted by Miss Lucy Rogers, whom he later learned was the Assistant Clerk of the General County Court of Wilson County. He said the officer informed Miss Rogers that he, Butler, was speeding and she "got out a chart" and told him the fine and costs would be $41.85; and that he paid that amount to her, taking a receipt. While he was there he saw the traffic officer "writing on a yellow pad about the size of a salesbook;" that he was not given a copy of a warrant nor shown a copy; that he was not advised by anyone to be present in court at any particular date; that he signed no waiver of appearance; entered no plea of guilty or not guilty; and did not authorize any person to enter any plea on his behalf; that he paid the $41.85 because he wanted to get away and go on to Florida; and that nothing was said about the money being paid as bail for his later appearance in court or as a collateral deposit. He understood that he was under arrest and in custody; and that he was not paying a bribe. He admitted that the traffic officer told him that he was charged with driving at eighty-five miles an hour; and that he knew he would not get the $41.85 returned to him. He said he was in the office of the Clerk of the Court a total of about ten minutes, and that while he had a full opportunity to speak, he remained silent.

Introduced in evidence was a certified copy of the record in the case of "State v. James Harris Butler," in the General County Court of Wilson County. The copy certified to by Miss Rogers showed the issuance of the warrant against Butler for driving eighty-five miles per hour, upon complaint of Officer C. R. Simons. It "commanded" the officer forthwith to arrest and have Butler before the General County Court of Wilson County on August 15, 1953, "then and there

to answer the complaint and be dealt with as the law directs." On the back of the warrant there is shown a notation that the charge was for "Speeding, 85 MPH" and the payment of $25.00 and costs. There also appears the following notation: "Received the........day of ......................, 19....... Executed........ day of ................., 19....... (Signed) C. R. Simons, SHP." Attached thereto is this memorandum:

"Judgment
#23110
State v. James Harris Butler
Speeding
8/15/53
D. P. G.
$25.00 and costs."

A receipt dated August 15, 1953, showed that the Clerk of the Superior Court of Wilson County had accepted from Butler $41.85 for "Payment fine & costs."

The depositions of Officer Simons, Judge Miles and Miss Rogers show the following state of facts:

Simons, a State Highway Patrolman, testified that he "checked" Butler's car for speeding and "followed him for a distance of approximately fifteen miles at speeds at times higher than eighty-five;" that he was unable to stop Butler until he was in the City limits of Kenly, North Carolina; that he advised Butler of the speed he was traveling, of the speed limit in the State, told him that he was under arrest for speeding at the rate of eighty-five miles, and to follow him back to the Clerk's Office; that Butler accompanied him to the Court House in Wilson, and there, in the presence of Butler, he signed a warrant charging the latter with driving at eighty-five miles an hour; that after he signed the warrant, Miss Rogers, the Assistant Clerk, picked up the warrant and told Butler he was being charged with speeding eighty-five miles an hour; and that if he wished to plead guilty to the charge of eighty-five miles an hour, she would advise him what the fine and costs would be, or if he had rather come back to court at a later date, he could put up a bond; that he did not remember what Butler said in reply but that the amount of the fine and costs was paid by Butler "without any squabble or anything at all said about it;" that Butler knew what was going on and that if he did not put up the fine and costs or give bond, the only alternative was to put him in jail; that Butler paid the fine and costs "voluntarily",

and without any protest or inquiry as to whether he should return for trial at a later date.

Simons further said that after signing the warrant, he filled out a daily arrest report; but did not give Butler a copy of either. He declared that he again informed Butler of the charge against him when he signed the warrant and that Miss Rogers also did so; and that under the circumstances, he did not read the complete warrant to Butler.

In his deposition, Judge James E. M. Miles, of the General County Court of Wilson County, testified that during the course of a year his court handled more than 1,000 traffic cases, and that he had no recollection of the particular case of Butler. He said that a system had been devised in his court, whereby a person apprehended for violating the traffic laws of North Carolina could be brought before the Clerk of the Superior Court, which Clerk is also Clerk of the General County Court, and permitted to plead guilty to the charge if he so desired; that the person was to be warned not to plead guilty unless he was actually guilty, and informed that he could do one of three things: that is, pay the standardized fine established by the court, post bond, or go to jail and await trial; that he did not enter judgment on each warrant, but that at the conclusion of every session of the court he signed the minutes of the court; and that on the docket of his court, bearing his signature, there was an entry of the case of "State v. James Harris Butler," indicating a charge of unlawful speed, that the defendant pleaded guilty, and paid a fine of $25.00 and costs.

Judge Miles said his court meets Friday of each week; but where a defendant tenders a plea of guilty in advance and posts a sum of money, a docket sheet is prepared by the Clerk, and if the defendant's name is called, and he fails to answer, "a judgment of forfeiture or a judgment *nisi* is entered;" that the fund paid to the clerk, as in this case, is applied toward the payment of the fine which is used for school purposes; and that his records showed that the money deposited by Butler was so forfeited. He further said that a person who leaves the prescribed sum of money, according to a chart setting out standardized fines and costs for certain speeds, is allowed to proceed on his way and not return, unless he so chooses; but that the case is not closed until the judge has so indicated by signing the docket or minute book.

Miss Lucy Rogers, in her unsworn deposition, said that she had no recollection of this case. She remembered receiving a letter from counsel for Butler requesting a copy of any documents on file in her

office with reference to appellee's case; that while her signature was on the certified copy of the record forwarded to Butler, she did not prepare it. She explained the omission of the dates where notation of service should have been made by saying that "We have been known to make mistakes." Handed a photostatic copy of the warrant filed as an authenticated exhibit by the appellant, she also looked at the original warrant and said both bore exactly the same notations on the back in entirety. These notations were as follows: "James Harris Butler, 1001 Spring Road, Apartment 5, Richmond, 28, Virginia. W. M. 44, D. L. 2277129, speeding eighty-five miles per hour, C. R. Simons. Received the 15th day of August, 1953. Executed 15th day of August, 1953. Private C. R. Simons, SHP."

She identified the signature of Officer Simons, said that she had prepared the photostatic copy of the warrant and its notations at the request of appellant shortly after August 15, 1953, and that it was a true and correct copy of the warrant and notations thereon.

The letter of June 25, 1954, from the North Carolina Department of Motor Vehicles set out that the evidence at the June 24, 1954, hearing showed that "Butler was not served, in the formal sense with a warrant;" that no bond was posted or forfeited; that no waiver of appearance was signed; that Butler "simply paid to the Assistant Clerk of Court a sum of money as a fine and that entry was later made on the Court records to the effect that Mr. Butler entered a plea of guilty;" and that "In view of the facts, the Attorney General has advised the Department that there has been no legal conviction and that Mr. Butler's driving privileges should be restored."

The statutes of North Carolina provide that in each county of that State the General County Court "shall have jurisdiction in all criminal cases arising in the county which are now or may hereafter be given to a justice of the peace and in addition thereto shall have exclusive original jurisdiction of all other criminal offenses committed in the county below the grade of felony as now defined by law, and the same are hereby declared to be petty misdemeanors." Section 7-278, General Statutes of North Carolina of 1943.

Section 7-274 of the same General Statutes provides:

"The clerk of the Superior Court of the county shall be ex officio clerk of the General County Court, herein provided for, * * *. The clerk of said court or any deputy thereof, upon application and making of proper affidavit, as provided by law, shall have power and authority to issue any criminal warrant or warrants in said court and

make the same returnable before the judge thereof, at any time or times designated for the trial of criminal cases. * * *."

Section 15-47, General Statutes of North Carolina of 1943, provides:

"Upon the arrest, detention, or deprivation of the liberties of any person by an officer in this State, with or without warrant, it shall be the duty of the officer making the arrest to immediately inform the person arrested of the charge against him, and it shall further be the duty of the officer making said arrest, except in capital cases, to have bail fixed in a reasonable sum, and the person so arrested shall be permitted to give bail bond; and it shall be the duty of the officer making the arrest to permit the person so arrested to communicate with counsel and friends immediately, and the right of such persons to communicate with counsel and friends shall not be denied."

Section 15-102 provides:

"Officers before whom persons charged with crime, but who have not been committed to prison by an authorized magistrate, may be brought, have power to take bail as follows:

"(1) Any justice of the Supreme Court or a judge of a Superior Court, in all cases.

"(2) Any clerk of the Superior Court, any Justice of the Peace, or any Chief Magistrate of any incorporated city or town, in all cases of misdemeanor and in all cases of felony not capital."

Section 20-16, 1951 Supplement, General Statutes of North Carolina, relating to its Department of Motor Vehicles, provides:

"(a) The department shall have authority to suspend the license of any operator or chauffeur without preliminary hearing upon a showing by its records or other satisfactory evidence that the licensee:

\* \* \* \* \* \* \*

"10. Has been convicted of operating a motor vehicle at a speed in excess of seventy-five (75) miles per hour.

\* \* \* \* \* \* \*

(c) Upon suspending the license of any person as hereinbefore in this section authorized, the department shall immediately notify the licensee in writing and upon his request shall afford him an opportunity for a hearing as early as practical within not to exceed twenty

(20) days after receipt of such request in the county wherein the licensee resides unless the department and the licensee agree that such hearing may be held in some other county, and such notice shall contain the provisions of this section printed thereon. Upon such hearing the duly authorized agents of the department may administer oaths and may issue subpoenas for the attendance of witnesses and the production of relevant books and papers and may, except as provided in Section 20-231, require a re-examination of the licensee. Upon such hearing the department shall either rescind its order of suspension, or good cause appearing therefor, may extend the suspension of such license."

Section 20-19 (b), 1951 Supplement, General Statutes of North Carolina, provides:

"(b) When a license is suspended under paragraph 10 of § 20-16, the period of suspension shall be not less than six months and not more than one year."

Under § 20-24 (c), 1951 Supplement, General Statutes of North Carolina, " 'conviction' means a final conviction and a forfeiture of bail or collateral deposited to secure a defendant's appearance * * *." This is similar to § 46-387 (4), Code of Virginia, 1950.

It will be noted that § 20-16 (a), *supra*, merely gives the Motor Vehicle Department of North Carolina "authority to suspend" a driving license for certain violations of the traffic laws of that State. Its provisions are not mandatory, and, in that respect are unlike the mandatory provisions of Virginia Code, §§ 46-416.1, as amended, and 46-454. Nor does § 20-16 (c), General Statutes, *supra*, provide a time limit within which the hearing therein provided for shall be held.

The letter of June 25, 1954, from the North Carolina Department of Motor Vehicles does not set out the evidence heard at the hearing mentioned; but states only the conclusions of that Department as to its effect, and that the action of the Department was based on advice from the Attorney General. A copy of the opinion of the Attorney General, if any was written, was not filed.

Butler was, of course, entitled to a formal trial before the General County Court and to raise before that court the question of his guilt or innocence, as well as any questions relating to the invalidities of which he now complains. He did not ask for such trial, nor raise any question of his guilt then or now.

The arresting officer's testimony, the original and authenticated records of the proceedings, the testimony of the appellee, and other

evidence clearly show that Butler was arrested for the offense of un-lawful speeding; that he was orally summoned by the arresting of-ficer to appear before the General County Court of Wilson County, a court having jurisdiction of the offense; that in response Butler ap-peared before an officer of that Court having authority to issue a criminal warrant for the offense alleged and to take bail for his ap-pearance for trial; that a warrant was issued; that Butler was fully informed of the charge against him and the penalty for the offense, if guilty; that Butler knew he was in custody and that to obtain his release, he had to give bond for his appearance for trial, or deposit collateral therefor, or pay the prescribed fine and costs; that upon his failure to take one of these steps, he would be confined in jail to await trial; that informed of the amount of the fine and costs for the offense charged, Butler chose to pay that amount to the officer authorized to take bail or collateral, rather than to appear for trial and defend the charge against him. He thereby obtained his release, made no in-quiry about a subsequent appearance or trial, and departed on his way.

It further appears that the collateral deposited was forfeited to the State as a fine and costs and judgment accordingly entered by the trial judge, and that no appeal has been taken from that judgment.

In "North Carolina, an accused may deposit cash in lieu of bail, and it is subject to forfeiture upon his non-appearance. *White* v. *Ordille*, 229 N. C. 490, 50 S. E. 2d 499." *Lamb* v. *Smith*, 195 Va. 1053, 1057, 81 S. E. 2d 768.

The facts in this case are, in many respects, similar to those found in *Lamb* v. *Smith*, *supra*, and in *Nelson* v. *Lamb*, 195 Va. 1043, 81 S. E. 2d 762. See also *Tate* v. *Lamb*, 195 Va. 1005, 81 S. E. 2d 743 and *Lamb* v. *Lanzarone*, 195 Va. 1038, 81 S. E. 2d 760. They were sufficient to prove a valid forfeiture by the General County Court of Wilson County of the $41.85, deposit made by appellee with the Assistant Clerk of that County to avoid appearance for trial on a charge of speeding, providing only that the named court had jurisdic-tion, under the circumstances, to try Butler for the offense charged.

The above facts clearly show that the criminal action was pending when the criminal warrant was issued, and that the forfeiture of the collateral deposited with the officer authorized to admit Butler to bail had the force and effect of a conviction under § 46-387 (4), Code of Virginia, 1950, and a like effect in North Carolina under § 20-24 (c), 1951 Supplement, General Statutes of North Carolina. *Lamb* v. *Par-*

*sons,* 195 Va. 353, 357, 78 S. E. 2d 707; *Lamb* v. *Smith, supra,* 195 Va. page 1053; *Tate* v. *Lamb, supra; Lamb* v. *Lanzarone, supra.*

The General County Court of Wilson County had jurisdiction of the offense, of the person charged with the offense and the subject matter involved. The act of Butler, under the circumstances recited, was in itself a plea of guilty and an acknowledgment of the pendency of the case and the jurisdiction of the court. *Tate* v. *Lamb, supra; Dillon* v. *Joyner,* 192 Va. 559, 66 S. E. 2d 583. It would be naive, indeed, to believe that he did not know that the payment of the money to the Assistant Clerk of the Court would, upon his failure to subsequently appear for trial, be forfeited.

■ While § 20-16, *supra,* provides that the Department of Motor Vehicles of North Carolina "shall have authority to suspend" an operator's license under certain conditions, and upon a subsequent hearing "shall either rescind its order of suspension, or good cause appearing therefor, may extend the suspension of such license," it does not authorize that Department, or the Attorney General of that State, to review and invalidate the judgment of a court of competent jurisdiction. The action of the North Carolina Commissioner in revoking the suspension of Butler's license in that State goes no further than to void his former action in rescinding such license. It did not have the effect of voiding Butler's conviction, nor provide a refund of the fine and costs imposed. The conviction still stands on the records of North Carolina, and is on its face valid and outstanding in all respects.

The crucial question is whether the accused was, in fact, convicted in North Carolina of an offense therein which, "if committed in this State would be grounds for the suspension or revocation of the license granted to him * * *." Virginia Code, § 46-454; § 46-416.1, as amended.

[■ It is true that the proceedings here lacked regularity and formality to a certain degree; but whether the procedure adopted and acquiesced in by Butler was regular in all particulars is of no moment. The important questions are whether the North Carolina Court had jurisdiction and whether Butler was properly before the Court.

The first question we have hereinbefore answered in the affirmative. The second question is based upon the claim of Butler that no warrant was served on him. The original record and the authenticated record and supporting evidence are amply sufficient to show that Butler was before the court. His oral summons to appear was, under

the circumstances, as good and sufficient as a written summons. His testimony alone denying service is insufficient to deny and impeach the issuance of the warrant, the officer's return and the judgment of the Court. *Nelson* v. *Lamb, supra,* 195 Va. 1043; *Lamb* v. *Smith, supra,* 195 Va. 1053. There was a valid forfeiture of the fund deposited by him, and the deposit was used as he intended and its forfeiture amounted to a conviction.

Appellee relies upon the case of *In Re: Wright,* 228 N. C. 301, 45 S. E. 2d 370; affirmed on rehearing in 228 N. C. 584, 46 S. E. 2d 696. The facts in that case are different from those here. In that case, it is clear that the North Carolina Court held the alleged "conviction" of the offense in South Carolina invalid because no warrant had been issued; and, therefore, there was no criminal action pending, and there could be no forfeiture of bail, in the absence of judicial proceedings.

The integrity of the judicial process would be set at stake if judgments valid on their faces should be voided by actions of administrative officers or by the opinions of executives or officers of the government to the effect that they are invalid.

It should be borne in mind that this is a proceeding in equity, that the purpose of equity is to render natural right or justice, and that the "Motor Vehicle Safety Responsibility Act of Virginia" is required to be liberally construed. In Virginia Code, § 46-388, it is provided: "It is the legislative intent that this chapter be liberally construed so as to effectuate as far as legally and practically possible and feasible its primary objective to promote and further greater safety in the operation of automotive vehicles in this State."

It is not our duty to undertake to indulge in refinements not warranted either by the language of a statute or its expressed purpose, nor search for legal loopholes through which a guilty person may escape the consequences.

For the foregoing reasons, the judgment of the trial court is reversed and set aside, and the appellant authorized to take such action as may be necessary to enforce against Butler his revocation order of September 16, 1953.

*Reversed and final decree.*